**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

**THOMAS FLOYD,**

　　　　**Petitioner,**

**v.**　　　　　　　　　　　　　　　**Case No.: 5:16cv101-WTH/CAS**

**JULIE JONES, SECRETARY,**
**FLORIDA DEPARTMENT OF**
**CORRECTIONS,**

　　　　**Respondent.**
**_____/**

## <u>REPORT AND RECOMMENDATION</u>

On March 25, 2016, Petitioner Thomas Floyd proceeding pro se, filed a petition for writ of habeas corpus, with one exhibit, pursuant to 28 U.S.C. § 2254.  ECF No. 1.  On July 11, 2016, Petitioner filed an amended habeas corpus petition, with one exhibit.  ECF No. 9.  On February 13, 2017, the Respondent filed an answer, with exhibits.  ECF No. 16.  Petitioner did not file a reply although leave was given to do so.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all issues raised, the undersigned has determined that no evidentiary

hearing is required for disposition of this matter.  *See* Rule 8(a), R. Gov.
§ 2254 Cases in U.S. Dist. Cts.  For the reasons stated herein, the
pleadings and attachments before the Court show that Petitioner is not
entitled to federal habeas relief, and the amended § 2254 petition should
be denied.

## PROCEDURAL HISTORY

By indictment filed on January 26, 1999, the State of Florida charged
Thomas William Floyd in the Circuit Court of the Fourteenth Judicial Circuit,
Bay County, Florida, with the crime of felony first degree murder, in
violation of Section 782.04(1)(a)1, Florida Statutes, in connection with
events on or about January 10, 1999.  Ex. A at 8.[1]

On January 27, 1999, Petitioner entered a plea of not guilty.  *Id*. at
10.  The case proceeded to trial and on September 15, 1999, the jury found
Thomas William Floyd guilty of murder in the first degree.  *Id*. at 89.  On
October 18, 1999, the court adjudicated Petitioner guilty and sentenced him
to life imprisonment.  *Id*. at 99-103.

On October 19, 1999, Petitioner appealed his conviction and
sentence to the First District Court of Appeal (First DCA) (Case No. 1D99-

---

[1] Hereinafter, citations to the state court record. "Ex. –," refer to exhibits submitted in
conjunction with Respondent's answer, ECF No. 16.

Case No. 5:16cv101-WTH/CAS

4071).  Ex. A at 108-09.  On August 31, 2001, the First DCA issued a per

curiam affirmance of the conviction and sentence.  *Id*. at 164.  On

September 19, 2001, the First DCA issued the mandate.  *Id*. at 163.

On May 16, 2002, Petitioner filed a motion for post-conviction relief

pursuant to Florida Rule of Criminal Procedure 3.850.  Ex. D at 165-76.

Petitioner raised four grounds, claiming that his trial counsel was ineffective

for (1) conceding defendant's guilt in opening argument, (2) failing to file a

motion to suppress the defendant's confession, (3) failing to call the

defendant's step-son as a witness to refute state witness testimony, and (4)

misstating the law on Florida's self-defense statute.  *Id*.  In his

memorandum of law, Petitioner's fourth ground was reframed as counsel

"incorrectly defining self-defense and not arguing it at trial."  *Id*. at 233.

The post-conviction court conducted an evidentiary hearing.  Ex. D at

215.  The post-conviction court denied Petitioner's motion for post-

conviction relief on all grounds.  Ex. D at 272-73.  The court stated that the

"preponderant evidence presented at this hearing supports defense

counsel's decision not to advance a self-defense theory."  *Id*.  Petitioner

appealed this denial to the First DCA (Case No. 1D04-1789).  Ex. D at 295.

On December 20, 2004, the First DCA issued a per curiam affirmance.  Ex.

G at 1.  On December 29, 2004, the Petitioner filed a motion for rehearing

and request for en banc review.  Ex. K.  On January 3, 2005, the First DCA

denied Petitioner's motion for rehearing and rehearing en banc.  Ex. L.  On

January 5, 2005, the First DCA issued the mandate.  Ex. G at 3.

On July 24, 2007, Petitioner filed a second motion for post-conviction

relief, raising five grounds.  Ex. H at 1-30.  The Petitioner alleged that he

was (1) "denied equal protection and due process of law when [he] was

approached by a show of authority based only on police suspicion without

receiving Miranda rights"; (2) "denied equal protection of law when [his]

right to privacy was infringed upon by show of policy authority without

probable cause shown based only upon suspicion"; (3) "denied equal

protection and due process of law when no informed consent agreement

was established with defendant or made with full knowledge of the risks

alternatives involved"; (4) "deprived of the due process requirements for

evaluating voluntariness of defendant['s] statements surrounding the giving

of confession"; and (5) denied right to counsel "upon a failure of [a] Miranda

hearing and the trial court erred in failing to further instruct the jury of

knowledge regarding the conflicting issue."  *Id*.  On July 24, 2007,

Petitioner also filed what the court interpreted as a motion to suppress.  *Id*.

at 31-63.  The post-conviction court denied the motion to suppress for

untimeliness, and the court denied the motion for post-conviction relief for

(1) being time-barred under Rule 3.850, as the motion was filed more than two years from the date of finality; (2) being successive, and failing to explain why Petitioner did not raise these issues in his first Rule 3.850 motion; and (3) Petitioner's failure to raise these issues on direct appeal. *Id*. at 64-65.

On August 23, 2007, Petitioner filed a motion for rehearing, which was denied on September 11, 2007.  Ex. H at 98-99.  On September 20, 2007, Petitioner appealed to the First DCA (1D07-5057).  *Id*. at 102-04.  On April 2, 2008, the First DCA issued a per curiam affirmance.  Ex. J at 1.  On April 29, 2008, the First DCA issued the mandate.  *Id*. at 3.

On September 3, 2014, Petitioner filed a Rule 3.850 motion for post-conviction relief, arguing that newly discovered evidence of extraneous jury contact warranted his conviction being overturned, with the sworn affidavit of John Robert Mulkin attached.  Ex. M at 1-19.  On October 8, 2014, the state post-conviction court issued an order striking the motion for post-conviction relief for facial insufficiency, but giving leave to amend within sixty days.  *Id*. at 20.  On November 17, 2014, Petitioner filed an amended motion for post-conviction relief.  *Id*. at 21-27.  On June 19, 2015, the state post-conviction court denied Petitioner's motion.  *Id*. at 56-59.  The post-conviction court stated that the affiant's claims were too speculative and

conclusory to warrant relief, were "inherently incredible," and that the

affidavit failed to qualify as newly discovered evidence because Petitioner

failed to demonstrate the information could not have been discovered

earlier with the exercise of due diligence, as required by Rule 3.850(b)(1).

Ex. M at 47-50.

On July 13, 2015, Petitioner appealed to the First DCA (1D15-3370).

Ex. M at 173.  On October 22, 2015, the First DCA issued a per curiam

affirmance.  Ex. Q at 1.  On November 17, 2015, the First DCA issued the

mandate.  *Id*. at 3.

As indicated above, on March 25, 2016, Petitioner filed a habeas

corpus petition, with one exhibit.  ECF No. 1.  On July 11, 2016, Petitioner

filed an amended habeas corpus petition, with one exhibit.  ECF No. 9.

## **TIMELINESS**

Petitioner's judgment became final on November 29, 2001, ninety

days after the First DCA issued the August 31, 2001, per curiam

affirmance.  Petitioner was not entitled to seek discretionary jurisdiction of

the Florida Supreme Court because the First DCA issued a per curiam

affirmance without written opinion.

On May 16, 2002, Petitioner filed his first tolling motion.  At this point

the AEDPA clock had run for 168 days.  The post-conviction court denied

the motion, and Petitioner appealed, keeping the time tolled.  On January

5, 2005, the First DCA issued the mandate, concluding the appeal and

restarting the AEDPA clock. McMullan v. Roper, 599 F.3d 849, 852 (8th

Cir. 2010) (noting time remains tolled on post-conviction petition until

mandate issued).

The AEDPA clock then ran for an additional 197 days until it expired

on July 21, 2005.  Any motions Petitioner filed after this date had no effect

on the AEDPA time, because there was no time left to toll.  Sibley v.

Culliver, 377 F.3d 1196, 1204 (11th Cir. 2004); Tinker v. Moore, 255 F.3d

1331, 1333 (11th Cir. 2001).  Thus, Petitioner's habeas corpus motion is

untimely.

## **ACTUAL INNOCENCE**

Petitioner advances a claim of actual innocence, which would allow

the Petitioner to advance otherwise procedurally defaulted claims.  ECF

No. 9 at 13.  A claim of actual innocence requires Petitioner to show that

his conviction resulted from a "constitutional violation," and "requires

petitioner to support his allegations of constitutional error with new reliable

evidence." Scarlett v. Sec'y, Dep't Corr., 404 F. App'x 394, 401 (11th Cir.

2010) (unpublished).  Actual innocence is a claim of "factual innocence, not

mere legal insufficiency." Johnson v. Fla. Dep't of Corr., 513 F.3d 1328,

1334 (11th Cir. 2008). The Petitioner "must demonstrate that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt," and "must raise sufficient doubt about his guilt to undermine confidence in the result of the trial." *Id*. The petitioner must support the actual innocence claim "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995); Rolle v. Florida, No. 4:10cv152-MP/CAS, 2012 WL 7808122 at *8 (N.D. Fla. 2012) ("[A]ctual innocence" exception requires Petitioner "(1) to present 'new reliable evidence . . . that was not presented at trial,' and (2) to show 'that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt' in light of the new evidence.").

Petitioner provides new information: an affidavit. However, the information alleged in the affidavit is not evidence of "actual innocence." It asserts extraneous contact with the jury. While the district court is not "bound by the rules of admissibility that would govern at trial," and may "consider the probative force of relevant evidence that was either excluded or unavailable," this type of evidence, even if true, is not the kind of factual evidence that pertains to Petitioner's actual guilt or innocence. Schlup, 513

U.S. at 327-28.  Petitioner did not present any new reliable evidence

sufficient to meet the stringent actual innocence exception.  *Id*. at 329.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2254, as amended by the Anti–Terrorism

and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody. Section 2254(d)

provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim—
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).

The state court's factual findings are entitled to a presumption of

correctness and to rebut that presumption, the Petitioner must show by

clear and convincing evidence that the state court determinations are not

fairly supported by the record.  *See* 28 U.S.C. § 2254(e)(1).  This Court's

review "is limited to the record that was before the state court that

adjudicated the claim on the merits."  Cullen v. Pinholster, 563 U.S. 170,

181 (2011).  However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  In order for remedies to be exhausted, the petitioner must have given the state courts an opportunity to address his federal claim.  *Id*.; McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) ("[T]o ensure that state courts have the first opportunity to hear all claims, federal courts have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.").  Petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law claim."  Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998).  "[I]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice

or the fundamental miscarriage of justice exception is applicable." Smith v.
Jones, 256 F.3d 1135, 1138 (11th Cir. 2001).

## GROUND 1: NEWLY DISCOVERED EVIDENCE

The state post-conviction court found that the affidavit offered by
Petitioner as newly discovered evidence failed to meet the Rule 3.850(b)(1)
newly discovered evidence exception, because (1) the "affidavit is too
speculative and conclusory to warrant postconviction relief," that (2) the
"nature of the affidavit makes it inherently incredible," and (3) the affidavit
"did not qualify as newly discovered evidence due to a lack of diligence."
Ex. M at 47-50.  The state post-conviction court denied Petitioner's post-
conviction motion without an evidentiary hearing.  When no evidentiary
hearing is held, the state post-conviction court "must accept the
defendant's factual allegations to the extent they are not refuted by the
record." Foster v. State, 810 So. 2d 910, 914 (Fla. 2002).  Rule 3.850
directs the state post-conviction court to attach to its order the portions of
the record which demonstrate that the files and records in the case to
conclusively show that the movant is entitled to no evidentiary hearing and
no relief.  Fla. R. Crim. P. 3.850(f)(5).  Regarding Petitioner's newly
discovered evidence claim under the AEDPA, Section 2254 mandates that
a petitioner who failed to develop the factual basis for a claim in state court

shall not be granted a federal evidentiary hearing unless a petitioner demonstrates that the claim relies on a "*factual predicate that could not have been previously discovered through the exercise of due diligence*." 28 U.S.C. § 2254(e)(2)(A)ii.

The newly discovered claim for which Petitioner seeks relief is based on an affidavit stating that the affiant observed juror misconduct in the form of third-party contact with jurors.  "Newly discovered evidence need not relate directly to the issue of guilt or innocence . . . but may be probative of another issue of law.  United States v. Campa, 459 F.3d 1121, 1151 (11th Cir. 2006) (internal quotations omitted).  To establish misconduct, "[t]he defendant has the burden to show that the jury has been exposed to extrinsic evidence or extrinsic contacts.  Once the defendant establishes that such exposure in fact occurred, prejudice is presumed and the burden shifts to the government to rebut the presumption."  Boyd v. Allen, 592 F.3d 1274, 1305 (11th Cir. 2010).  The court is required to accept Petitioner's allegations "as true and a hearing should be held unless they are contradicted by the record, inherently incredible, merely conclusions, or would not entitle [Petitioner] to relief."  Roundtree v. United States, 751 F.3d 923, 926 (8th Cir. 2014); Garcia v. United States, 679 F.3d 1013, 1014 (8th Cir. 2012) (same).

Petitioner has failed to demonstrate that the state post-conviction court's determinations should be considered unreasonable.  The state post-conviction found that the affidavit was inherently incredible based on a combination of factors: the fifteen-year delay in the affiant coming forward; that the affiant is supposedly a family friend (close enough to the family to attend Petitioner's trial), and yet withheld this information for over a decade; and that the affiant was a correctional officer, who would have surely known that the victim's family members or friends attempting to intimidate jurors was improper.  Ex. M at 48-49.  *See* <u>Placide v. State</u>, 189 So. 3d 810 (Fla. 4th DCA 2015) (finding that information in an affidavit alleging jurors were witnessed pre-judging the case could have been discovered with due diligence and was inherently incredible because the affiant was a close family friend who withheld this knowledge for twenty-one years).

Moreover, portions of the trial court record conclusively refute the affidavit's claim and support the state post-conviction court's summary denial of the claim.  The trial court instructed the jury that they would not be allowed to discuss the case amongst themselves or with anyone else or allow "anyone to say anything to you or in your presence," and that if there were any such communications made about the case, they should report it to the bailiff who would report the matter to the court.  ECF No. 19 at 215-

16 (trial transcript).  The judge repeated the instruction throughout the trial to the jury that they were not to communicate with anyone about the case. *Id*. at 325, 461, 490, 575, 623.  On the last day of guilt phase of trial, the judge directly asked the jurors if they had discussed the case with anyone, and the jurors responded in the negative.  *Id*. at 468.  The judge directly asked the jurors again after the conclusion of the guilt phase and before the commencement of the penalty phase, and the jurors once again responded in the negative.  *Id*. at 582.

Petitioner does not sufficiently demonstrate in either his state post-conviction motion or his federal habeas petition why this information could not have been discovered sooner with the exercise of due diligence. Zeigler v. State, 654 So. 2d 1162, 1164 (Fla. 1995) (the two year window for a newly discovered evidence claim began to run when DNA typing became available, but Petitioner waited an additional three years); Blake v. State, 152 So. 3d 66, 68 (Fla. 2d DCA 2014) ("[A] defendant must not only allege but also demonstrate that his motion was filed within two years from the date that the evidence *could have been* discovered.") (emphasis added) (internal quotations omitted); Vaillancourt v. State, 845 So. 2d 983, 984 (Fla. 2d DCA 2003) (the consequences of deportation did not constitute newly discovered facts that could not have been previously

learned of through due diligence); <u>Graddy v. State</u>, 685 So. 2d 1313, 1314

(Fla. 2d DCA 1996) ("[The] time frame of the rule begins to run at the time

such facts are discovered or could have been reasonably discovered

through the exercise of due diligence.").

From the affidavit, it appears that there was no due diligence

exercised, but that the information was stumbled upon during a casual

conversation between friends, the affiant and Petitioner's father.  Ex. M at

16.  This shows that the information in the affidavit, if true, was readily

available and could have easily been discovered at any time.  There is no

indication that the family friend was unavailable in the 15 years between

the date of trial and when the information came forth.

Regardless of any procedural default, Petitioner has not

demonstrated that he is entitled to federal habeas relief on this ground.

## **GROUND 2: INEFFECTIVE ASSISTANCE OF COUNSEL**

For his second ground Petitioner argues he is entitled to habeas relief

because his trial counsel was ineffective for failing to argue a self-defense

defense at trial and request a self-defense instruction.  ECF No. 9 at 11-13.

This ground was previously raised in Petitioner's state post-conviction

motion filed May 16, 2002, and accompanying memorandum of law.  Ex. D

at 165-76.  After conducting an evidentiary hearing, the state post-

conviction court denied Petitioner's Rule 3.850 motion, stating that the "preponderant evidence presented at this hearing supports defense counsel's decision not to advance a self-defense theory."  *Id*. at 273.  The court cited to the transcript from the evidentiary hearing for support (evidentiary hearing transcript pg. 10-13 (Ex. D at 260-63)).  In this portion of the transcript, trial counsel testified that he believed Petitioner's subjective fears while "high on crack" and "paranoid" would not have passed under an objective, reasonable person standard,[2] the facts of the case did not support a self-defense claim, and that losing on a self-defense claim would increase the probability of the jury recommending a death sentence.  Ex. D at 260-63.

Additionally, as to the first claim (arguing ineffectiveness of counsel for conceding Plaintiff's guilt in opening statement) the court explained:

> The more credible evidence at the hearing on this issue came from the defendant's counsel Walter Smith. . . . Mr. Smith discussed with the Defendant the strategy of conceding facts supporting the lesser crime of third degree murder.  The

---

[2] The jury instructions to be read in all cases on justifiable use of deadly force state: "In deciding whether (defendant) was justified in the use or threatened use of deadly force, you must consider the circumstances by which [he] was surrounded at the time the force or threat of force was used.  The danger need not have been actual; however, to justify the use of threatened use of deadly force, the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that force or threat of force. . . . However, the defendant had no duty to retreat if [he] was not otherwise engaged in a criminal activity and was in a place [he] had a right to be."  Fla. Std. Jury Instr. (Crim.) 3.6(f), Justifiable Use of Deadly Force.

> Defendant consented to this strategic decision which was intended to have the Defendant found not guilty of the charge of first degree murder by providing the jury with an alternative lesser offense. This course of action seems reasonable in light of the totality of the evidence amassed against the Defendant.

Ex. D at 272.

For claims of ineffective assistance of counsel, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).

To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Burt v. Titlow, 134 S. Ct. 10, 17 (2013). Federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Id*. at 13. The reasonableness of counsel's conduct must be viewed as of the time of counsel's conduct. *See* Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015). To demonstrate prejudice, a defendant

"must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

"The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id*. It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id*.

Petitioner's federal habeas corpus petition does not reference any specific federal constitutional or statutory provisions, except to say that "Petitioner properly advances this Constitutional claim and seeks Habeas relief." ECF No. 9 at 13. In his state post-conviction claim, Petitioner references due process in regard to ineffective assistance of counsel. Ex. D at 173. Even assuming Petitioner's habeas petition properly alleged a

violation of due process or another constitutional principle, no federal habeas relief is warranted.

The state post-conviction court determined that trial counsel's decision to not raise a self-defense claim was part of a sound trial strategy, and the Petitioner does not show why this determination is unreasonable. The strategy advanced by counsel at trial was to concede to a non-enumerated felony murder.  Ex. D at 254-55.  Trial counsel believed that a third-degree murder conviction was the preferable result because "it wasn't a matter of if he was going to prison but for how long and whether the death penalty could be avoided."  *Id*.  Trial counsel testified at the evidentiary hearing that he discussed this strategy of conceding to third-degree murder with Petitioner, and Petitioner assented to it.  *Id*. at 255. Counsel's decision was based on assessment of the strength of the State's case as to first degree murder. *Id*. at 258.  Counsel testified that nothing in Petitioner's statement or the evidence "at the scene" suggested a self-defense claim, and that pursuing a self-defense claim was never brought up by himself or by Petitioner.  Ex. D at 260.  Trial counsel believed that the facts of Petitioner's case "did not support a legitimate claim of self-

defense." [3]  *Id*. at 262.  Furthermore, raising a self-defense claim would have conflicted with the trial strategy that counsel and Petitioner agreed upon.  Thus, trial counsel's decision to not raise self-defense was part of a "sound trial strategy."  *See* Strickland*,* 466 U.S. at 689.

Counsel cannot be deficient under the first prong, and Petitioner additionally fails to meet the prejudice prong by showing there was a reasonable probability the outcome of the proceeding would have been different had a self-defense claim been advanced.  Thus, Petitioner fails to demonstrate that the post-conviction court's denial of his ineffective assistance of counsel claim was unreasonable under the facts or contrary to any federal law as determined by the Supreme Court.

Relief should be denied on this ground.

---

[3] The medical examiner testified at trial that the victim suffered a total of twenty-eight injuries, ECF No. 19 at 340 (trial transcript), that a "fair amount" of force was used to drive the knife through the victim's arm, *id*. at 345-46, and that the victim suffered numerous defensive injuries on his hands, *id*. at 346-48.  Additionally, Petitioner was not prevented from testifying at trial that the victim threatened to shoot him and that Petitioner knew the victim owned a gun because he had observed it before.  ECF No. 19 at 449-50.  Petitioner testified that he stabbed the victim every time the victim reached down or beneath the car seat because he believed the victim had a gun underneath the car seat, and Petitioner needed to defend himself.  *Id*. at 450-51.  Petitioner testified that the victim leaned over and was "fumbling for something on the floorboard" when the Petitioner ended the struggle by stabbing the victim in the neck.  *Id*. at 452.  Petitioner acknowledged that a gun was ultimately not found at the scene, but agreed that at the time it seemed real to him.  *Id*. at 459.  Petitioner also testified that he smoked crack cocaine earlier that day.  *Id*. at 458-59.

Case No. 5:16cv101-WTH/CAS

## CONCLUSION

Petitioner is not entitled to federal habeas relief.  Accordingly,

Petitioner's amended § 2254 petition (ECF No. 9) should be denied.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United

States District Courts provides that "[t]he district court must issue or deny a

certificate of appealability when it enters a final order adverse to the

applicant," and if a certificate is issued "the court must state the specific

issue or issues that satisfy the showing required by 28 U.S.C.

§ 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still

be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a

constitutional right."  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S.

473, 483-84 (2000) (explaining substantial showing) (citation omitted).

Therefore, the Court should deny a certificate of appealability.

Rule 11(a) also provides: "Before entering the final order, the court

may direct the parties to submit arguments on whether a certificate should

issue."  The parties shall make any argument as to whether a certificate

should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed.

R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is

filed, the court may certify appeal is not in good faith or party is not

otherwise entitled to appeal in forma pauperis).

## RECOMMENDATION

It is therefore respectfully **RECOMMENDED** that Petitioner's

amended petition for habeas corpus (ECF No. 9) be **DENIED** and that

leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on November 1, 2017.


**<u>S/ Charles A. Stampelos</u>**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. R. 3-1; 28 U.S.C. § 636.**